~~SECRET~~

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

February 2009 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD GOLDSTEIN, <br><br> Defendant. | Case No. **10CR 4576 W** <br><br> I N D I C T M E N T <br><br> Title 18, U.S.C., Sec. 371 - Conspiracy; Title 26, U.S.C., Sec. 7206(1) - Willful Subscription to False Individual Tax Returns; Title 31, U.S.C., Sec. 5314 and 5322(a), and Title 31, Code of Federal Regulations, Secs. 103.24 and 103.27(c) and (d) - Willful Failure to File FBARs |

The grand jury charges that at all times material to this Indictment unless otherwise noted:

**INTRODUCTORY ALLEGATIONS**

1. Defendant Bernard Goldstein (hereinafter "GOLDSTEIN"), was a Canadian citizen and lawful permanent resident of the United States residing in Carlsbad, San Diego County, located within the Southern District of California.

2. GOLDSTEIN owned and operated MG Export-Import, Inc., a California-based company that exported oil pipeline products to Russia.

3. Citizens and residents of the United States who have income in any one calendar year in excess of a threshold amount ("United States taxpayers") are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the Internal Revenue Service ("IRS"). On such return, United States taxpayers are obligated to report their income from any source, regardless of whether the source of their income is inside or outside the United States.

TJS:JAR:lml:San Diego
11/16/10

In addition, on Schedule B of Form 1040, the filer must indicate whether "at any time during [the relevant calendar year]" the filer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, the taxpayer must indicate the name of the particular country in which the account is located.

4. In addition, United States taxpayers who have a financial interest in, or signature authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year are required to file with the U.S. Department of Treasury a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year. The FBAR requires that the filer identify the financial institution with which the financial account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

5. As a lawful permanent resident of the United States, the tax-related obligations described in paragraphs 3 and 4 above fully applied to GOLDSTEIN.

6. Co-conspirator UBS AG ("UBS") (charged elsewhere), was a corporation organized under the laws of Switzerland. UBS, directly and through its subsidiaries, operated a global financial services business. Among other things, UBS provided banking, wealth management, and asset management services to United States taxpayers.

7. Co-conspirators A and B worked at a firm based in Zurich, Switzerland.

8. In or about January 1992, GOLDSTEIN caused to be opened in his own name account number xxxxxx083 at UBS in Switzerland ("UBS Account 083"). GOLDSTEIN was the beneficial owner of UBS Account 083. The year-end account balances in GOLDSTEIN's UBS Account 083 were approximately as follows:

//
//
//
//

| Year | UBS Account 083 Year-End Balance |
|---|---|
| 2000 | $2,098,174 |
| 2001 | $490,976 |
| 2002 | $209,033 |
| 2003 | $232,021 |
| 2004 | $245,574 |
| 2005 | $260,884 |
| 2006 | $298,204 |
| 2007 | $273,083 |

9. In or about October 2000, co-conspirators A and B assisted GOLDSTEIN in setting up a corporation in Panama named Kasler Management Corp. ("Kasler"). As a Panamanian corporation, Kasler could issue shares of stock in bearer form to provide for anonymous ownership. Co-conspirator A was designated as an officer and director of Kasler.

10. In or about December 2000, GOLDSTEIN caused to be opened account number xxxxxx912 at UBS in Switzerland in the name of Kasler (the "Kasler Account"). GOLDSTEIN was the beneficial owner of the Kasler Account. Both co-conspirators A and B had signature authority over the Kasler Account. The year-end account balances in GOLDSTEIN's Kasler Account were approximately as follows:

| Year | Kasler Account Year-End Balance |
|---|---|
| 2000 | $815,367 |
| 2001 | $1,661,339 |
| 2002 | $978,274 |
| 2003 | $2,355,246 |
| 2004 | $1,216,183 |
| 2005 | $1,142,103 |
| 2006 | $1,788,170 |
| 2007 | $945,120 |

//

11. In at least 2002, GOLDSTEIN maintained an account with UBS Cayman Islands Ltd. (the "Cayman Islands Account"), with net assets totaling approximately $319,865 as of June 14, 2002.

12. In or about March 2007, GOLDSTEIN caused to be opened in his own name account number xxxxxx994 at UBS in Switzerland (the "UBS Account 994"). GOLDSTEIN and another individual were the beneficial owners of the UBS Account 994.

## Count 1

### (Conspiracy to Defraud - 18 U.S.C. § 371)

13. The grand jury realleges and incorporates the Introductory Allegations contained in paragraphs 1 through 12 above.

14. Beginning on a date unknown to the grand jury and continuing to at least March 2009, the exact date unknown to the grand jury within the Southern District of California and elsewhere, defendant BERNARD GOLDSTEIN did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate and agree with UBS, co-conspirators A and B, and other individuals both known and unknown to the grand jury, to defraud the United States by deceitful and dishonest means for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal income taxes.

### MANNER AND MEANS

15. It was part of the conspiracy that GOLDSTEIN and his co-conspirators established Kasler, a sham corporation in the known tax haven of Panama, for the purpose of hiding from the IRS GOLDSTEIN's ownership and interest in certain assets.

16. It was further part of the conspiracy that GOLDSTEIN and his co-conspirators established a bank account at UBS in the name of Kasler, a sham corporation in Panama, for which GOLDSTEIN was the beneficial owner.

17. It was further part of the conspiracy that GOLDSTEIN's co-conspirators signed forms falsely declaring that Kasler was the beneficial owner of the Kasler account, when in reality, GOLDSTEIN was the beneficial owner of the account.

18. It was further part of the conspiracy that GOLDSTEIN and his co-conspirators caused certain bank records relating to GOLDSTEIN's UBS accounts to be maintained at locations outside of the United States.

19. It was further part of the conspiracy that GOLDSTEIN and his co-conspirators withdrew cash and transferred assets from and between GOLDSTEIN's UBS accounts in order to conceal these assets from the IRS.

20. It was further part of the conspiracy that, after UBS disclosed that the United States Government was actively conducting a criminal investigation of UBS's cross-border banking business, GOLDSTEIN and his co-conspirators withdrew cash from one of GOLDSTEIN's UBS accounts.

21. It was further part of the conspiracy that GOLDSTEIN and his co-conspirators caused the transfer of assets from GOLDSTEIN's UBS accounts to an account at another large global Swiss bank headquartered in Zurich, Switzerland, in order to conceal these assets from the IRS.

22. It was further part of the conspiracy that GOLDSTEIN concealed from his tax return preparer the existence of his offshore accounts and any income earned from these accounts.

23. It was further part of the conspiracy that GOLDSTEIN caused to be prepared, signed, and filed his joint U.S. Individual Income Tax Returns, Forms 1040, which affirmatively concealed his ownership, interest in, and authority over his offshore accounts, and which failed to report any income earned from these accounts.

24. It was further part of the conspiracy that, after UBS entered into a Deferred Prosecution Agreement with the United States Government concerning UBS's United States taxpayer clients, GOLDSTEIN fled the United States to avoid detection and discovery of his role in the conspiracy.

//
//
//
//
//

## OVERT ACTS

25. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

   A. On or about October 23, 2000, GOLDSTEIN and his co-conspirators caused to be filed with the Republic of Panama Articles of Incorporation and related documents to create Kasler.

   B. In or about December 2000, GOLDSTEIN and his co-conspirators opened the Kasler Account.

   C. On or about May 29, 2001, GOLDSTEIN caused the transfer of approximately $802,000 from GOLDSTEIN's UBS Account 083 to his Kasler Account.

   D. On or about February 21, 2002, GOLDSTEIN signed a document directing the transfer of approximately $30,000 from his Kasler Account to a bank account in San Diego, California.

   E. In or about July 2002, GOLDSTEIN caused the transfer of assets from the Cayman Islands Account to his Kasler Account.

   F. On or about September 18, 2003, co-conspirator B requested that UBS make available $15,000 in cash from the Kasler Account for co-conspirator A to retrieve from a UBS bank counter.

   G. On or about September 19, 2003, GOLDSTEIN and co-conspirator A caused the withdrawal of approximately $15,000 from the Kasler Account.

   H. On or about March 30, 2004, GOLDSTEIN and co-conspirator B signed a document directing the transfer of approximately $349,000 from GOLDSTEIN's Kasler Account to his UBS Account 083.

   I. On or about April 15, 2004, GOLDSTEIN caused the transfer of approximately $350,051 from his Kasler Account to his UBS Account 083.

   J. On or about April 30, 2004, GOLDSTEIN caused the transfer of approximately $350,051 from his UBS Account 083 to an account at another large global Swiss bank headquartered in Zurich, Switzerland, also held in the name of Kasler Management Corporation.

K.  On or about September 28, 2004, co-conspirator A signed UBS's Substitute Form W-8BEN that falsely declared that Kasler was the beneficial owner of GOLDSTEIN's UBS Kasler Account.

L.  On or about March 7, 2007, GOLDSTEIN signed a document directing the transfer of approximately $40,000 from GOLDSTEIN's UBS Account 083 to his Kasler Account.

M.  On or about April 16, 2007, GOLDSTEIN caused the transfer of approximately $40,000 from his UBS Account 083 to his Kasler Account.

N.  On or about July 31, 2008, GOLDSTEIN withdrew cash of approximately 100,000 Swiss francs from his UBS Account 994.

O.  On or about October 27, 2008, GOLDSTEIN caused the withdrawal of the remaining cash from UBS Account 994, via a bank check made payable to Kasler for approximately $51,597.

P.  On or about the dates set forth below, GOLDSTEIN caused to be prepared, signed and filed with the IRS false joint U.S. Individual Income Tax Returns, Forms 1040, which affirmatively concealed his ownership, interest in, and authority over his offshore accounts, and which failed to report any income earned from these accounts:

| Overt Act | Tax Year | Date Filed |
|---|---|---|
| P(1). | 2003 | October 6, 2004 |
| P(2). | 2004 | September 28, 2005 |
| P(3). | 2005 | September 12, 2006 |
| P(4). | 2006 | September 14, 2007 |
| P(5). | 2007 | September 8, 2008 |

Q.  In or about March 2009, GOLDSTEIN fled the United States.

All in violation of 18, United States Code, Section 371.

//
//
//
//

## Counts 2-6

### (Making and Subscribing a False Tax Return - 26 U.S.C. § 7206(1))

26. The grand jury realleges and incorporates the Introductory Allegations contained in paragraphs 1 through 12 above.

27. On or about the following dates within the Southern District of California and elsewhere, defendant BERNARD GOLDSTEIN, did willfully make and subscribe joint U.S. Individual Income Tax Returns, Forms 1040, for the tax years set forth below, which were verified by a written declaration that the income tax returns were made under penalties of perjury, and did file these income tax returns with the IRS, which returns he did not believe to be true and correct as to every material matter, in that GOLDSTEIN: (a) on Line 22 (total income) of the Forms 1040 failed to report income earned from one or more bank, securities, and other financial accounts at UBS AG, and (b) on Schedule B, Part II, line 7a of the Forms 1040, reported that he did not have an interest in, or a signature or other authority over a financial account in a foreign country, whereas GOLDSTEIN then and there well knew and believed that he received income in addition to the total income reported and had an interest in, and signature and other authority over, bank, securities, and other financial accounts in Switzerland:

| Count | Tax Year | Date Filed |
|---|---|---|
| Two | 2003 | October 6, 2004 |
| Three | 2004 | September 28, 2005 |
| Four | 2005 | September 12, 2006 |
| Five | 2006 | September 14, 2007 |
| Six | 2007 | September 8, 2008 |

All in violation of Title 26, United States Code, Section 7206(1).

//
//
//
//
//

### Counts 7-9

### (Willful Failure to File Report of Foreign Bank and Financial Accounts - 31 U.S.C. §§ 5314 and 5322(a); 31 C.F.R. §§ 103.24 and 103.27(c) & (d))

28. The grand jury realleges and incorporates the Introductory Allegations contained in paragraphs 1 through 12 above.

29. On or about the dates set forth below within the Southern District of California and elsewhere, defendant BERNARD GOLDSTEIN, did knowingly and willfully fail to file with the U.S. Department of the Treasury a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1, disclosing that he had a financial interest in, and signature and other authority over, a financial account in a foreign country, namely, a Swiss bank account at UBS AG, which had an aggregate value of more than $10,000 during the years set forth below.

| Count | Tax Year | Due Date of Form TD F 90-22.1 |
|---|---|---|
| Seven | 2005 | June 30, 2006 |
| Eight | 2006 | June 30, 2007 |
| Nine | 2007 | June 30, 2008 |

All in violation of Title 31, United States Code, Sections 5314 and 5322(a), and Title 31, Code of Federal Regulations, Sections 103.24 and 103.27(c) and (d).

DATED: November 16, 2010.

A TRUE BILL:

*Cheryl Felix*
Foreperson

LAURA E. DUFFY
United States Attorney

By: *[signature]*
TIMOTHY J. STOCKWELL
Special Assistant U.S. Attorney

By: *[signature]*
JOSEPH A. RILLOTTA
Special Assistant U.S. Attorney